**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHEMAR BRADSHAW** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-CV-04966** |
| | § | |
| **CITY OF HOUSTON, DETECTIVE KEN NEALY, OFFICER A. GOMEZ, AND OFFICER K. CUCCIA** | § | **JURY DEMANDE** |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff SHEMAR BRADSHAW files this FIRST AMENDED COMPLAINT and in support alleges the following:

## THE PARTIES

1. Plaintiff **SHEMAR BRADSHAW** is a citizen residing in Denton, County, Texas

2 Defendant **CITY OF HOUSTON** is a Texas municipality that has been served and appeared.

3. Defendant **DETECTIVE KEN NEALY** is an employee of the Houston Police Department who at all relevant times was acting under color of law. He may be served with summons at Houston Police Department, Edward A. Thomas Building, 1200 Travis St, Houston TX 77002 or wherever he may be found.

4. Defendant **OFFICER K. CUCCIA** is an employee of the Houston Police Department who at all relevant times was acting under color of law. He may be

served with summons at Houston Police Department, Edward A. Thomas Building, 1200 Travis St, Houston TX 77002 or wherever he may be found.

## JURISDICTION AND VENUE

5. Plaintiff brings this lawsuit for violations of his constitutional rights under the Fourth and the Fourteenth Amendments to the U.S. Constitution. 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201.

6. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings claims under the U.S. Constitution and federal laws. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff to redress the deprivation of federal constitutional rights under the color of state law or custom.

7. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) the events giving rise to Plaintiff's claim and injuries occurred in this district and this division.

## FACTUAL ALLEGATIONS

8. While lawfully driving his car in or near 6300 Richmond Avenue, Houston, Texas, Plaintiff heard the sirens of at least two police units approaching him from behind. Plaintiff pulled off the road, and stopped his car. At least 4 uniformed Houston Police officers rushed to his car. The HPD officers pointed their guns at Plaintiff, and one officer had a dog. Not one of the HPD officers present explained the reason for the stop or the reason they pointed their guns at him or the reason a dog was present. Plaintiff was handcuffed and detained at the scene in police units for approximately 2 hours. His car was searched without his permission. Firearms that he lawfully owned were confiscated by HPD. Despite repeated requests, his firearms were not returned to him for months. Plaintiff's firearms were not fully returned to him by HPD until at least March 2025.

9. Plaintiff was not and has not been charged with any crime. However, when Plaintiff filed a complaint with HPD internal affairs in June 2026, the internal affairs intake officer told Plaintiff he was listed as a "suspect" and therefore no documents could be released to him. The intake officer also said the "suspect" listing appeared to be a mistake, but he still could not release documents to Plaintiff.

10. Plaintiff, therefore, has been told by HPD that he is a "suspect" but refuses to inform Plaintiff was he is suspected of and refuses to release basic information about HPD interaction with him. This concealment of information by Defendant City of Houston and HPD precludes Plaintiff from, among things, properly identifying the HPD personnel involved, any potential justification for HPD conduct, and whether Plaintiff actually is a "suspect" and, if so, of what is he a suspected.

11. Defendant City of Houston and HPD have refused to release any documents relating to the events detailed in this Complaint despite his diligent effort to acquire them. He has made a Public Information Request and a formal complaint with the Houston Police Department. This deliberate withholding of information severely limits the ability of Plaintiff to develop factual information critical to his right to pursue a lawsuit vindicating the violation of his rights protected by the Constitution of the United States of America. Plaintiff cannot even identify the officers involved because of Defendant City of Houston's withholding of evidence. Since Plaintiff has been charged with nothing, and even his traffic stop has not been explained, the threat that he is a "suspect" to anything is both frightening and unlawful.

12. When approached by HPD officers with guns drawn and pointed at him, at all times, Plaintiff was fully compliant with the officers instructions.

13. Plaintiff asked the officers why he had been stopped. They replied that an HPD Detective had put a hold on Plaintiff , and Plaintiff would be detained until the detective arrived. Plaintiff believes the detective is named Ken Nealy.

14. Plaintiff does know that the traffic stop and the extension of that stop could not have been grounded on reasonable suspicion or probable cause because Plaintiff had not committed or was about to commit any unlawful act. Defendant City of Houston and HPD have never claimed they were acting pursuant to a warrant and Plaintiff was never told they had a warrant.

15. Defendant City of Houston nor HPD never told Plaintiff that he has committed any unlawful act or was suspected of doing so.

16. Plaintiff has not been charged with any unlawful act.

17.. Plaintiff was detained in police units at the location of the traffic stop for approximately two hours handcuffed.

18. HPD Detective Ken Nealy later arrived at the traffic-stop location and, without explanation, asked to search Plaintiff's car. Plaintiff refused consent. Even so, Detective Nealy ordered the search and seized firearms that Plaintiff lawfully owned.

19. Without warrant or other justification, HPD confiscated the firearms and held them for months. Plaintiff's firearms were not all returned until after February 2026.

20. The City of Houston and the Houston Police Department have no concrete policy guidelines to protect against foreseeable abuses of traffic stops by HPD officers.

21. Without such concrete policy guidelines, any HPD training on avoiding unconstitutional misconduct will foreseeably be inadequate and Defendant City of

Houston and HPD knew constitutional violations like those inflicted on Plaintiff have and will continue occur or are deliberately indifferent to this foreseeable consequence.

22. The facts that Plaintiff was stopped without any articulated justification, was approached by peace officers with guns pointed at him, was detained handcuffed for approximately two hours, had his vehicle searched without consent, had his lawfully owned firearms seized, confiscated and held for at least seven months, was refused basic police reports, and is still characterized as a "suspect" for an unidentified act demonstrate the obviousness of the Defendant City of Houston's and HPD's failings in policy, practice, custom, and training. So many constitutional violations by so many officers, coupled with the withholding of evidence from Plaintiff, cannot be portrayed as an isolated event. This is proof of a systemic problem and, saying otherwise, is evidence of deliberate indifference.

23. Plaintiff was detained for over two hours. Plaintiff was never charged with a crime. Plaintiff was never told the basis for the traffic stop. The Houston Police Department has refused to provide any documentation of the stop. It has not even provided an incident report. The absence of concrete policy was the moving force in the violation of plaintiff's constitutional rights. Without a concrete policy, the Houston police were able to, without constitutional justification, stop the Plaintiff, detain the Plaintiff for hours, point their loaded weapons at the Plaintiff,, seize Plaintiffs lawfully owned firearms, and stonewall requests for information that would explain or justify any of their conduct.

24. Without concrete policy guidelines, training will foreseeably be inadequate Non-existent policy guidance cannot be trained or taught. Nonexistent policies

inevitably lead, as they have in this case, to violations of well-established constitutional principles.

25. Deficiencies in policy, practice, custom, and training caused multiple violations of Plaintiff's constitutional rights and served as the moving force behind those constitutional violations, and proximately caused Plaintiff's injuries.

26. Plaintiff's injuries caused by Defendants include but are not limited to the expense of engaging counsel to seek return of his confiscated property and attempting to obtain the release of documents related to the interaction between Defendant's and Plaintiff, costs incurred by Plaintiff in travel to Houston to attempt to obtain information, file a formal complaint with HPD, and seek the return of his property, severe mental anguish caused by all described misconduct, including, but not limited to, the fact that he is categorized as a suspect for unidentified wrongdoing, and Defendants continuing indifference to him as a citizen while, at the same time, threatening him with future harm by branding him as a suspect

## CAUSES OF ACTION

### CLAIM I.
### VIOLATION OF THE FOURTH AMMENDMENT

27. Plaintiff incorporates all previous paragraphs as if set forth herein.

28. Defendants lacked reasonable suspicion or probable cause to stop or detain Plaintiff.

29. Defendants lacked reasonable suspicion or probable cause to extend the traffic stop and Plaintiff's detention.

30. Defendants lacked reasonable suspicion or probable cause to search Plaintiff's car or seize his firearms.

31. Defendants used excessive force when pointing their guns at Plaintiff.

**CLAIM II.**
**VIOLATION OF THE FOURTEENTH AMMENDMENT DUE PROCESS**

32. Plaintiff incorporates all previous paragraphs as if set forth herein.

33. Defendants violated Plaintiff's procedural and substantive due process in the initial traffic stop.

34. Defendants violated Plaintiff's procedural and substantive due process in the seizure, confiscation, and delay in returning his lawfully owned firearms.

35. Defendants violated Plaintiff's procedural and substantive due process by withholding the release of all documents related to the interactions between Plaintiff and HPD.

36. Defendants violated Plaintiff's procedural and substantive due process by continuing to identify Plaintiff in their system as a "suspect."

**CLAIM III.**
**MUNICIPAL LIABILTY**

37. Plaintiff incorporates all previous paragraphs as if set forth herein.

38. Municipalities may be held liable under 42 U.S.C. §1983 for constitutional deprivations committed pursuant to a policy, custom, or practice of the municipality. Even absent an officially adopted policy, a custom or practice that is so persistent and widespread that it fairly represents a municipal policy will support liability against the municipality. A pattern of unconstitutional conduct may be shown on the part of municipal employees who are not policymakers.

39. The City of Houston and the Houston Police Department at all times relevant to this complaint did not have a policy and related training or training materials that concretely addressed the Constitutional limitations on the initiation of traffic stops, the length of time a person could be detained when stopped, the initiation of an investigation into potential criminal activity unrelated to the traffic stop, the unconsented search of the stopped vehicle, the seizure and disposition of property within the stopped vehicle, and the return of such property to its owner of the stopped vehicle.

40. The City of Houston and the Houston Police Department did at all relevant times have a policy, custom, and practice of withholding from Public Information Requests documentation related to traffic stops that did not result in an arrest, including basic incident reports

41. These failings in policy, practice, custom, and training caused and were the moving force behind the violation of Plaintiff's constitutional rights described in this Complaint. .

42. The City of Houston's policymakers such as their Mayor John Whitmire, City Council, Police Chief Noe Diaz, and other HPD management had actual or constructive knowledge about these failings. The City of Houston's policymakers were deliberately indifferent as to the probable untoward results of these failing, This

is particularly true as traffic stops are among the most common reasons for law enforcement encounters with civilians.

43. The failings in policies, customs, practices, practices and training discussed have understandably received growing public attention as they relate to HPD traffic stops related to immigration enforcement. In that context, they include the following:

a. The City's policy or custom of allowing its officers to hold individuals at traffic stops and other encounters with ICE administrative warrants for ICE.

b. The City's policy or custom of failure of supervisors or others to supervise its officers which hold individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

c. The City's policy or custom of failure to discipline its officers which hold individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

d. Current and former Section 34-41 of the Houston Code of Ordinances which allows its officers to hold individuals with ICE administrative warrants for ICE thereby causing detentions the exceed the parameters of the Constitution.

e. A pattern and practice of HPD officers to holding individuals with ICE administrative Warrants for ICE thereby causing detentions that exceed the parameters of the Constitution.

*Lopez v. City of Houston,* 4:26-cv-06226 (S.D.TX, 2026).

44. As demonstrates, however, the failings in policies, practices, customs, and training related to traffic stops is not limited to events involving ICE intervention. Instead, these ICE events expose core failings that foreseeably result in constitutional violations inflicted on Plaintiff in this case.

**JURY DEMAND**

45. Plaintiff has demanded his right to a jury trial.

**PRAYER FOR RELIEF**

SHAMAR BRADSHAW requests that the Court:

A. Enter judgment against the Defendants for compensatory damages.

B. Award damages for Plaintiff's present and future pain and suffering, mental anguish, anxiety, fear, anger, and depression caused by the acts of the Defendants.

C. Award punitive damages. Defendants were consciously indifferent to Plaintiff constitutional rights, and their violation Plaintiff's constitutional rights were knowing, extreme, outrageous, and shocking to the conscience or they were committed deliberately indifferent to Plaintiff's protected rights.

D. Plaintiff is entitled to recover attorney's fees and costs to enforce his Constitutional rights under U.S.C. Sections 1983 and 1988.

E. Alternatively, Plaintiff should be awarded nominal damages for the violations of his Constitutional rights.

F. This Court should award such other and further relief as appears reasonable and just to which Plaintiff shows himself entitled.

Respectfully submitted,

*/s/ Jack E. Urquhart*

**Jack E. Urquhart**
Texas State Bar No. 20415600
Email: jack.urquhart47@gmail.com
1302 Waugh Drive, No. 880
Houston, TX 77019
(832) 723-2201

**ATTORNEY FOR PLAINTIFF SHEMAR BRADSHAW**

## CERTIFICATE OF FILING AND SERVICE

I do hereby certify that a true and correct copy of the above and foregoing document was FILED and SERVED on opposing counsel electronically the 20th day of August 2026.

*/s/ Jack E. Urquhart*

**Jack E. Urquhart**